SUBURBAN LIGHT AND POWER COMPANY *vs.* BOARD OF ALDERMEN OF BOSTON.

Suffolk.    November 13, 1890. — January 26, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ.

*Electric Lighting — Location of Posts — " Shall " — Mandamus.*

The Pub. Sts. c. 109, which provide, in § 2, that lines of electric telegraph may be constructed along highways without incommoding the public, and, in § 3, that the municipal authorities "shall" specify in writing where the posts may be located, are not imperative, as extended by the St. of 1883, c. 221, and the St. of

1889, c. 398, "so far as applicable" to "lines for the transmission of electricity for the purpose of lighting," in requiring a board of aldermen of a city to provide for the location of the posts of an electric lighting company.

TWO PETITIONS for writs of mandamus.

IN THE FIRST CASE, the petitioner, an electric lighting company, sought to compel the respondents to grant it specific locations for its posts within certain highways in the city of Boston, in accordance with a petition filed with the board on January 20, 1890, and refused on February 10, 1890. Hearing on the petition and a demurrer filed thereto, before *Field*, C. J., who sustained the demurrer, and dismissed the petition; and the petitioner alleged exceptions.

IN THE SECOND CASE, the petitioner sought to compel the respondents to give it, in accordance with a petition filed with the board on March 3, 1890, and refused on April 28, 1890, "a writing specifying where, upon and along the highways and public roads of said city, especially in the districts of South Boston, Roxbury, Dorchester, and West Roxbury, it may locate such number of posts as may be reasonably necessary to enable your petitioner properly to do its business, the kind of posts, and the height at which and the places where the lines may be run." Hearing upon the petition and a demurrer filed thereto, before *Knowlton*, J., who reserved the case for the consideration of the full court.

*R. M. Morse, Jr. & C. E. Hellier*, (*A. C. Burrage* with them,) for the petitioner.

*J. B. Richardson & A. J. Bailey*, for the respondents.

BY THE COURT. The following opinion was written by Mr. Justice DEVENS, and after his death was approved as the opinion of the court by the Justices who sat with him at the argument

The second petition to the board of aldermen, which is the only one which need be considered, does not ask that the aldermen shall give any specific location for posts, etc. to the petitioner, but that they shall specify in writing where, along the highways of the city in the direction indicated, it may locate "such number of posts as may be reasonably necessary to enable your petitioner properly to do its business, the kind of posts, and the height at which and the places where the lines may be run." The petitioner's contention is, that it is the duty of the board

of aldermen to give it such a writing; and that whatever the authority of the board may be as to details concerning the number of posts, their place of location, or construction, and no matter what the difficulties may be in providing any location for its posts such as will be necessary for its business, such a writing and specification must be given. The provisions of the statute are thus construed as mandatory on the board, and absolutely requiring it to provide for the location of the poles of the company. The board having refused to do this by giving the petitioner leave to withdraw, the petitioner now asks that the board may be compelled by mandamus to give to it written specifications as above stated. Pub. Sts. c. 109, §§ 2, 3.

The argument of the petitioner is founded upon the use of the word " shall," in § 3 of the Pub. Sts. c. 109, which, as it urges, is a term not admitting of any other construction than that some appropriate location must be provided for, and that the duty to do this is an imperative obligation. While the word " may " in statutes has been construed as " shall " in many cases, and thus as imposing a positive duty, the word " shall " has not often been construed as " may," and as importing only power or authority. But there is no reason, where the connection in which this word is used, or the relation into which it is put with other parts of the same statute, indicates that such is its object, that it should not receive such a construction.

That the power given to the aldermen of a city, or the selectmen of a town, in regard to the location of poles, etc., was one to be exercised in their discretion, and that the whole subject was committed to them by the statutes, seems to have been assumed in several cases. *Hill* v. *County Commissioners*, 4 Gray, 414. *Young* v. *Yarmouth*, 9 Gray, 386. *Commonwealth* v. *Boston*, 97 Mass. 555. *Pierce* v. *Drew*, 136 Mass. 75. In *Young* v. *Yarmouth*, Mr. Justice Dewey, referring to the St. of 1849, c. 93, embodied so far as this question is concerned in the Pub. Sts. c. 109, § 3, remarks: " These provisions clearly indicate the selection of a legally constituted board to adjudicate upon this subject, with full powers to revise their doings, and correct any errors which the practical working of the first specification and arrangements as to the location of such posts may seem to require."

However imperative the word "shall" in § 3 might be if it stood alone, it must be construed with the same word as used in § 2, and as subordinate thereto. It is of higher importance that the ordinary use of the highways should not be interrupted, than that these companies should enjoy the privileges they desire, and it is so deemed by the Legislature. Yet that it may sometimes be impossible that they can have locations in the direction they desire without this result, owing to the narrowness or other condition of the streets, is obvious. In such a case, as § 2 of the Pub. Sts, c. 109, declares that the posts, wires, etc. "shall not incommode the public use of highways or public roads," the right on the part of telegraph companies to demand a location must yield to the higher public interest.

In this connection it was said in *Pierce* v. *Drew, ubi supra*: "No right is given these companies to use the highways at their own pleasure, or to compel in all cases, as the plaintiff suggests, locations therein to be given them by the municipal authorities. The second section of the statute is to be construed with the third section, and shows an intention that a legally constituted board shall determine not only where, but whether, there can be a location which shall not incommode the ordinary public ways, with full power to revise its own doings, and to correct any errors which the practical working of the arrangements may reveal." But if the Pub. Sts. c. 109, §§ 2 and 3, should be construed as imperatively compelling the board of aldermen to grant some location for the posts of telegraph lines from one town into and through another, it would not necessarily follow that such a construction must be given thereto in the location of posts for the use of an electric lighting company.

This chapter (Pub. Sts. c. 109) deals only with the subject of telegraph lines. Its provisions were extended to "lines for the transmission of electricity for the purpose of lighting," by chapter 221 of the St. of 1883, and chapter 398 of the St. of 1889, "so far as applicable.". As chapter 109 of the Pub. Sts. was originally enacted only with reference to telegraph companies whose lines must often, if not always, pass from town to town, and run through different towns, if it were intended, as the plaintiff contends, that the officers of one of these towns should not have the power to defeat the operations and business of such corporations,

and that they should be compelled to grant some locations for the necessary posts, the same intention would not necessarily exist in reference to electric lighting companies, whose operations are usually confined to a single town, or a part of a single town, and are of local interest merely.

The reason for an imperative construction, we think, ceases when these provisions of statute are made to apply "so far as applicable" to the latter class of local companies, and the statute should not then receive such a construction. It cannot, we think, be inferred, as the plaintiff urges, that it was intended that it was not to be in the power of local boards to defeat the operations of electric lighting companies the organization of which was authorized by statute. When we observe how many considerations, so far as the public is concerned, enter into the question whether the streets shall be used for electric lighting companies of a local character, — the liabilities of the cities or towns which may be involved, the danger to their inhabitants and to travellers, the other demands for the use of the streets, the necessity or otherwise of any use of the streets by any such companies, the expenses which must be incurred, and the character for responsibility of the particular company petitioning, — it is not readily supposable that in regard to companies whose operations were confined to a single town all that was intended to be left to the board of aldermen or selectmen were questions of detail only. In each case the entry must be,

*Petition dismissed.*

## MEMORANDUM.

ON the twenty-eighth day of January, 1891, the Honorable JOHN LATHROP, one of the Justices of the Superior Court, was appointed a Justice of this Court in place of Mr. Justice DEVENS, deceased, and took his seat upon the bench on the second day of February, 1891, at the session of the full court then held at Boston, in the county of Suffolk.