# Hobbs *v.* Long Distance Telephone & Telegraph Co.

*Bill to Enjoin Construction of Telephone Line Until Compensation For the Damage to Land is Paid.*

(Decided July 6th, 1906—41 So. Rep. 1003.)

1. *Eminent Domain; Use of Highway for Telephone Line.*—The construction of a telephone line is not an additional burden or servitude on the land entitling the abutting owner to compensation. (Tyson & Denson, JJ., dissent.)
2. *Injunction; Jurisdiction; Remedy at Law.*—If the owner of land abutting on a highway is entitled to compensation for cutting trees on the land, his remedy at law is adequate, and he is not entitled to an injunction.

[Hobbs v. Long Distance Telephone & Telegraph Co. ]

APPEAL from Limestone Chancery Court.

Heard before HON. W. H. SIMPSON.

Bill by T. M. Hobbs v. Long Distance Telephone and Telegraph Co., to prevent erection of poles and wires upon and across his land and for damages for having done so. The allegations of the bill and the other pleadings are sufficiently stated in the opinion of the court.

W. R. WALKER, JAMES HORTON, JR., and H. C. THATCH, for appellant.—A telephone line on a public highway is an additional burden or servitude for which the abutting landowner is entitled to compensation.— 106 Am. St. Rep. 233-268, see note; 27 Am. & Eng. Enc. Law (2nd Ed.) pp. 1008-1009; Lewis on Eminent Domain, § 131; Elliott on Roads & Streets, p. 534; I High on Injunctions (4th Ed.) p. 575; Keasbey on Electric Wires (2nd Ed.) pp. 119-120-121-122-123-124-125; Dillon on Munic. Corp., § 698 A.; Joyce on Elec. Law, § 321; Croswell on Law of Elec., § 110; Randolph on Eminent Domain, § 407; *Postal Teleg. Cable Co. v. Eaton*, 62 Am. St. Rep. 390; *Eels v. Am. Telph. & Teleg. Co.*, 143 N. Y. 133, 25 L. R. A. 640; *Stowers v. Postal Telg. Cable Co.*, 9 So. Rep. 356, 24 Am. St. Rep. 290; *Chespeake, etc. Teleg. Co. v. MacKenzie*, 74 Md. 36, 28 Am. St. Rep. 219; *Nichol v. N. Y. & N. J. Tel. Co.*, 72 Am. St. Rep. 666; *Am. Tel. & Teleg. Co. v. Smith*, 7 L. R. A. p. 200; *Board Trade Tel. Co. v. Barnett*, 47 Am. Rep. 453; *Western U. Teleg. Co. v. Williams*, 86 Va. 696, 8 L. R. A. 429; *Donovan v. H. D. Allert, et al.*, 58 L. R. A. 775; *Am. Tel. & Teleg. Co. v. Pearce*, 71 Md. 535; *Broom v. N. Y. & N. J. Tel. Co.*, 42 N. J. Eq. 141, 7 Atl. Rep. 851; *Dusenbury v. Mut. Tel. Co.*, 11 Abb. N. Cases 440; *Smith v. Central, etc. Tel. Co.*, 2 Ohio Cir. Ct. 259; *Willis v. Erie, etc. Co.*, 37 Minn. 347; *Atl. etc. Tel. Co. v. Chicago, etc. R. R. Co.*, 7 Biss 158; *People v. Squire*, 107 N. Y. 593. 1 Am. St. Rep. 893; *Pacific Cable Tel. Co. v. Irvine*, 49 Fed. Rep. 113; *Kester v. Western U. Teleg. Co.*, 108 Fed. Rep. 926; *Kincaid v. Ind. Nat. Gas Co.*, 8 L. R. A. 602, 24 N. E. 1026; *Spokane v. Colby*, 16 Wash. 610. 48 Pac. Rep. 248; *Kreuger v. Wisconsin Tel. Co.*, 106 Wis. 96, 50 L. R. A.

298; *Daily v. State,* 51 Ohio St. 348, 24 L. R. A. 724; *Bronson v. Albion Telph. Co.,* (Neb.) 60 L. R. A. 426; *Met. Telph. & Teleg. Co. v. Colwell Lead Co.,* 67 How. Pr. 365.

Analogous cases hold that the construction of a telegraph line along the right of way of a railroad is taking of the company's land, for which it is entitled to compensation.—*M. & O. R. R. Co. v. Postal Cable Co.,* 120 Ala. 21; *N. O. & M. & T. R. R. Co. v. So. & A. Tel. Co.,* 53 Ala. 212; *So. R. Co. v. So. & Atl. Teleg. Co.,* 46 Ga. 43, 12 Am. Rep. 585; *Western U. Teleg. Co. v. Rich,* 19 Kan. 517, 27 Am. Rep. 159; *Atl. & P. Teleg. Co. v. Chicago R. I. & P. R. Co.,* 6 Biss. 158; Lewis on Eminent Domain, § 1888; Mills on Em. Domain, § 55.

The erection of a telegraph line on a right of way of a railroad is an additional servitude for which the abutting owner is entitled to compensation.—*Am. Telph. & Teleg. Co. v. Smith,* 7 L. R. A. 200, and authorities there cited; *Am. Telph. & Teleg. Co. v. Pearce,* 71 Md. 535, 18 Atl. Rep. 910.

ERLE PETTUS, M. K. CLEMENTS and E. W. GODBY, for appellee.—A telephone line is not an additional burden on the fee.—*Pierce v. Drew,* 136 Mass. 75, 49 Am. Rep. 7; *Lockhart v. Craig St. R. R.,* 139 Pa. St. 419; *People v. Eaton,* 10 Mich. 208, 24 L. R. A. 721; *Cater v. N. W. Tel. Co.,* (Minn.) 28 L. R. A. 310; *Maxwell v. Cent. Dis. & Printing Tel. Co.,* 51 W. Va. 127; *Julia B. & L. Ass'n,* 88 Mo. 258; 57 Am. Rep. 398; *Frazier v. E. T. Tel. Co.,* Tennessee (In Manuscript); *Magee v. Overshiner,* 150 Ind. 127; *McCain v. Tel. Co.,* 52 L. R. A. 671; *Herschfield v. Rocky Mt. Bell Tel. Co.,* 29 Pac. 883; *Cumberland T. & T. Co. v. Awitt,* 85 S. W. 205; *Kirby v. Citizens Tel. Co.,* 97 N. W. 4; *N. Y. Tel. Co. v. Keesey,* 6 Am. Elec. Cases, 116.

SIMPSON, J.—This was a bill filed in the chancery court by appellant (complainant) against appellee (defendant) alleging that defendant was engaged in the construction of a telephone line across certain lands

owned by complainant, and seeking to enjoin further work on the same until payment should be made to the complainant, as compensation for damages to said lands. The defendant filed an answer denying the allegations of the bill, but alleging that it was engaged in constructing said line along the margin of a public road which runs through complainant's land, making as an exhibit; a map which shows the location of said line, showing that six trees on the line and a little underbrush will be cut, which, it alleges, are practically of no value, and alleging that when cut, the same will be left on the land for complainant. Demurrers were also filed to the bill and a motion to dismiss for want of equity. A preliminary injunction was granted, and subsequently the chancellor overruled the demurrers, and motion to dismiss the bill, and dissolved the injunction, and it is from this decree that the appeal is taken by the complainant. A cross-appeal is taken by the defendant, but subsequently dismissed by the cross-appellant, so that the only question raised is the correctness of the chancellor's decree in dissolving the injunction.

While, in the formative period of our system of laws, the courts were partly judicial and partly quasi legislative, meeting each case on its own merits, and thus building up the customs which became the law; yet the principles of the law came to us in their entirety, and, under our written constitutions, it is a cardinal principle that the judicial and legislative departments shall be entirely separate. Nevertheless, it has been true that, in this wonderful age of inventions, the burden rests upon the courts continually of applying the principles of the law to situations and complications of human affairs hitherto undreamed of, and it sometimes becomes a matter of great difficulty to determine just how to preserve those principles and yet meet the demands of justice. Since the days of the Ceasars, public highways have received the careful attention of all governments, not only for the the purpose of providing ways by which armies could be moved and the people travel, but for the purpose of opening up avenues of communication by which reports

could be speedily brought to the capital, and the interchange of commerce promoted. The laws of congress have provided for post roads, etc., before the telephone was known, provided for the same privileges for telegraph companies, as were given to railways in using the public lands, and, in later days, it has developed the exceedingly valuable system of "post routes" and free mail delivery along the public roads of the country, so that not the least important function of the public roads of the country is the transmission of messages from place to place.    The rights of the abutting owners, and the question as to what is or is not an additional servitude, have furnished material for a vast number of conflicting decisions, so numerous and so conflicting that it would extend an opinion beyond all reasonable limits, to attempt an analysis of them, yet a careful examination of them will show a gradual development of the principles of the law, in order to accommodate them to the progress of events and the onward march of civilization.

Thus, even in as late and excellent a work as that of Judge Dillon on Municipal Corporation, the rights of surface railways on the streets, and the question as to whether they constitute an additional burden, are spoken of as unsolved problems.    And in a note the wise words of Chief Justice Hale are quoted, in which he advises patience in solving these questions, and says:    "Time is the wisest thing under heaven. * * * It discovers such varieties of emergencies and cases, and such inconveniences in things that no man would otherwise have imagined," and the author of the note goes on to remark, among other things, that "good fruit in the law, as in the natural world, is the product alone of patient cultivation."    In a second note the then recent case of *Taggert v. Newport St. Ry. Co.,* (R. I.) 19 Atl. 326, 78 L. R. A. 205, is quoted, to the effect that an electric street railway, with its poles and wires, was not an additional servitude.—2 Dillon on Munic. Corp. § 734c, and notes.

On this subject, a recent writer states that the judgment of "substantially all of the courts of last resort in the United States," except New York, is that the "ordi-

nary electric street railway with trolley wire," etc., is not an additional burden on a street.—Nellis on Surface Railroads, pp. 134, 135; Elliott on Roads & Streets (2nd. Ed.) pp. 754, 757, §§ 698, 699.

The progress of thought on this subject is succinctly stated in Joyce on Electric Law, § 341; Keasly on Electric Wires, §§ 124, 145, conclusion on p. 178.

On the subject of erection of poles for electric lighting, on streets, after some contrary decisions, the evident necessity is so great that it has come to be generally understood that it is not an additional burden, though there still remains, in the decisions and text-writers, the impression that it is saved by the fact that the light companies generally light the streets as well as private dwellings, and, now, a recent text-writer says: "The distinction, however, is not made with respect to pipes for lighting by gas. It seems to be now conceded that city streets may be used for gas pipes, without compensation to abutting owners, whether it be for the purpose of supplying private houses, or for the purpose of lighting the streets and public places. The pipes used for both purposes are generally the same; the purpose is, in a sense, necessary and general, and the streets are the most convenient, if not the only means of access. * * * The same conditions apply to the electric light. * * * If the purpose is a public purpose for which the streets may be used, it would seem that compensation could not be properly required for the mere occupation of the soil by a pole any more than by a gas pipe."—Keasly on Electric Wires, § 112, p. 139. Other writers have also called attention to the fact that the streets are constantly used for fire plugs, fire alarm stations, and other things necessary for the protection and good order of the city; yet no court would, for a moment entertain the idea that they are an additional burden, for which the abutter could claim compensation. The last-named writer, we thing, suggests the practical solution of these matters, when he says: "It does not follow that the landowner is without redress, if poles be put up so as to interfere with his access, or even as to be inconvenient or unsightly, or if wires be hung so

as to be dangerous or so as to prevent ready access in case of fire.—Keasly on Elec. Wires, p. 139, § 113. "It might tend to a reconciliation of the cases and the adoption of a uniform rule, if the question of new burden were left on one side, and the attention were directed to the practical question whether or not the rights and privileges of the abutting owner * * * were affected."—Id. p. 177, § 145. "When the property is taken for a public road or street, although technically the fee remains in the abutting owner, yet he cannot interfere with the surface, and it would seem that, practically an additional burden, such as would, justify an action on his part should be something which either interferred with or made inconvenient his enjoyment of what remained to him in the land. As to obstructing the road, that would be a matter in which he had no greater right than the public generally, but if the new use impaired his proper use of his own property, in any manner, then, if it could be said to be a use not included within the original grant, it would be a matter for which he would be entitled to compensation."—Id. p. 153, § 124.

Judge Elliott says that "the owner who dedicates ground for a street creates an easement extensive enough to permit the city to make any legitimate public use of it which does not impair the right of passage or the right of ingress and egress to and from the adoining property."—Elliott on Roads & Streets (2d Ed.) p. 417, § 407.

The New Jersey court of chancery declares that "his right (the abutter on a public highway who holds the fee therein) is subordinate to that of the public and so insignificant, when contrasted with that of the public, that it has been declared to be practically without the least beneficial interest;" also (quoting from Justice Depue of New York Court of Errors and Appeals) "with respect to lands over which streets have been laid, the ownership, for all substantial purposes is in the public. Nothing remains, in the original proprietor but the naked fee, which on the assertion of the public right is divested of all beneficial interest."—Halsey v. Railway Co., 20 Alt. 860.

Courts are not organized to decide academic questions, but to decide upon practical rights of the people, and rem-

edy their real wrongs. It is in accordance with these principles that the courts have held that a steam railroad is an additional burden, because it renders the property of the abutting owner less habitable; while, as shown, the evident trend is to hold that electric lines are not. As said by the supreme court of Michigan: "When they do not interfer with the owner's access to and use of his land, we see no reason why they should be held to constitute an additional servitude."—Joyce on Elec. Law, § 336; *Detroit City Ry. Co. v. Mills*, 85 Mich. 634, 48 N. W. 1007.

We have indulged in these general remarks, because, as Mr. Cook says, on the subject of telegraph and telephone companies: "The decisions are in irreconcilable conflict."—3 Cook on Corp. (4th Ed.) § 933. And Mr. Keasly says: "It is not yet safe to predict which of the two views will finally prevail."—Joyce on Elec. Law, § 306.

Without referring to the cases, which will be found collated on both sides in the Tennessee case, to which we shall hereafter refer, our conclusion is that the public roads, when dedicated, were dedicated, not merely for travel on foot or on animals or in vehicles, but for locomotion by any means that should be afterwards discovered, and for communication between the citizens of the country, by carriers, on foot, or riding, or by any other means that might be found suitable and best. The mails could be sent over them in any way that was found most expeditious. If it had been found advisable to send the mails in metal boxes swung on wires far above the heads of the people, in place of in stages and by carriers, no one would have supposed it was an additional burden upon the abutting owner. So, if it is found better to string wires high above the roads and convey messages by that mysterious something which is in the atmosphere and which seems to be as exhaustless as the bounties of Providence, it is accomplishing one of the great purposes for which public roads are dedicated. Some of the cases have drawn a distinction between urban and surbanban roads, but in regard to wires and posts there would be

[Hobbs v. Long Distance Telephone & Telegraph Co. ]

more reason for declaring them burdensome in a city (where they accumulate in such numbers as to interfere with the operation of engines in extinguishing fires) than in the country where there are but few and far away from houses. It has been said that "it is hard to distinguish between a rural and an urban street, and that the nature of a street changes insensibly from the former to the latter, and a rule of property which depends on such a shifting and indefinite distinction is not likely to prove satisfactory."—Keasly on Elec. Wires, § 103.

We may add that the uses of the telephone are as important in the country as in the city, and it does not take a prophet's ken to see that in the near future they are to perform an important part in bringing the rural districts within the beneficial enjoyment of city improvements. The argument of Justice Devens of the Massachusetts supreme court is satisfactory to us on this general subject, and we think that the qualification which we make, that if the abutting owner shows that there will be actual and substantial injury to his property, he is entitled to compensation, meets the objections made in the dissenting opinion.—*Pierce v. Drew,* 136 Mass. 75, 49 Am. Rep. 7.

This matter of the rights of the abutting owners has been recently considered by the supreme court of Tennessee in an opinion, a certified transcript of which is furnished us, and that court, after giving long lists of the cases on each side of the controversy, takes the ground that one important function of the streets and roads of the country is to furnish means of communication, and that the telephone is only a new and very important invention for accomplishing that end, and does not constitute an additional burden.—*S. J. A. Frazier and Wife v. East Tenn. Telephone Co.,* (Supreme Court of Tenn. September Term, 1905) 90 S. W. 620.

Coming to the question of injunctive relief: It will be borne in mind that the right is granted by statute to telegraph and telephone companies to construct their lines "along the margin of the public highways."—Code 1896, § 2490.

This right is said to "depend either on whether such line constitutes an additional servitude entitling him to compensation (which we have held it does not) or whether his right of ingress or egress have been impaired, or whether, in some other way, he has been injured in his property rights. * * * Nor will an injunction be granted where the injuries are merely consequential, since a court of law is the proper tribunal in such a case."—Joyce on Elec. Law, § 1022.

The Court of Errors and Appeals of New Jersey says: "It is impossible to emphasize too strongly the rule so often enforced in this court, that a preliminary injunction will not be allowed where either the complainant's right, which he seeks to have protected, in limine by an interlocutory injunction, is in doubt, or where the injury which may result from the invasion of that right is not irreparable."—*Halsey v. Ry. Co.,* (N. J. Ch.) 20 Atl. 861; *Hagerty v. Lee,* 45 N. J. Eq. 255-256, 17 Atl. 826.

Our own court has expressed itself very strongly as to the absolute right of the state to control and use the public thoroughfares for all public purposes, and against the right to enjoin a public improvement authorized thereon. —*Perry v. N. O. M. & C. R. R..* 55 Ala. 413, 28 Am. Rep. 740; *Western Ry. of Ala. v. A. G. S. Ry.,* 96 Ala. 272, 281, 11 South. 483, 17 L. R. A. 474.

In a more recent case, it has declared the absolute right of a municipal corporation to authorize a telephone company, in stringing its wires, to cut trees on the sidewalk, without liability to the abutting owner.—*Southern Bell Tel. Co. v. Francis,* 109 Ala. 224, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930.

In this case it is the right of the public authorities to cut all the trees on the public roads or to authorize them to be cut, the abutting owner being merely entitled to the wood when felled. And, at any rate, even if the complainant had a right to compensation for the trees, his remedy at law is adequate and complete.

The decree of the chancery court is affirmed.

WEAKLEY, C. J., and HARALSON, DOWDELL, and ANDERSON, JJ., concur.

[City of Mobile v. Fowler, *et al.*]

·TYSON, J.—I cannot concur in the view expressed by my brothers. I prefer to follow the lead of the great weight of authority holding that poles and wires of a telephone company erected along a public country highway is an additional servitude upon the fee for which the owner must be compensated. I do not regard it as necessary to repeat the reasons for this holding, since they are ably, and in my opinion, unanswerably stated in the cases upon which I rely. These cases may be found collated in note on pages 721, and 722 of 24 L. R. A.; note on pages 261-263 of 106 Am. St. Rep. See, also, Elliott on Streets, §§ 397, 400, et seq.; 2 Dillon on Muni. Corp. § 698a. We need not have apprehension of depriving people of the use of this quasi public utility by this holding. Indeed, in those states where the cases cited above maintained this principle, the telephone systems, urban and suburban, are far more extensive than in this. The requirement of telephone companies to pay just compensation to the owners of land adjoining the public country roads does not seem to have been an impediment in the way of their extensive construction and operation; but even if that requirement is an impediment, this could be no possible justification for depriving the owner of his constitutional guaranty.

DENSON, J., concurs in these views.

