## ROARING SPRINGS TOWNSITE CO. v. PADUCAH TELEPHONE CO.

(Court of Civil Appeals of Texas. Amarillo. Jan. 31, 1914. On Motion for Rehearing, March 7, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 10*) — RIGHT TO CONSTRUCT LINES.

Rev. St. 1911, art. 1231, authorizes telegraph corporations to set their poles, etc., in the public streets so as not to interfere with their use. Article 1232 provides that such corporations may obtain a right of way and condemn lands for the use of the corporation as provided in case of railway corporations. Article 1235 permits the authorities of any city, etc., to specify where the telegraph posts shall be located, the height of the wires, etc. Held, that a reservation in the dedication deed of a townsite company, retaining power to grant to any telephone company the right to construct its lines over and across any streets, is void.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

2. INJUNCTION (§ 118*)—ALLEGATIONS OF PETITION—CONCLUSION.

An allegation of the petition, in a suit to enjoin a telephone company from maintaining its lines in the street, that the manner of constructing the poles interfered with the sidewalks and curbing is a conclusion upon which an injunction should not be granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 223–242; Dec. Dig. § 118.*]

3. EMINENT DOMAIN (§ 274*)—PROCEEDINGS—ENJOINING PROCEEDINGS.

Condemnation proceedings may be enjoined, if there is no right to condemn for the proposed purpose, and the right to condemn cannot be litigated in the proceedings themselves.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 753, 765–768; Dec. Dig. § 274.*]

4. MUNICIPAL CORPORATIONS (§ 663*) — STREETS—OWNERSHIP OF FEE.

The owner of property abutting on a public street or highway owns the fee to the center thereof, unless the grant otherwise provides.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1438–1440; Dec. Dig. § 663.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. CORPORATIONS (§ 29*)—DE FACTO CORPORA-
TIONS—POWERS.

As against all persons except the state, a de facto corporation has the same powers, and is subject to the same obligations, as a corporation de jure.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 77–79, 2504; Dec. Dig. § 29.*]

6. CORPORATIONS (§ 28*)—"DE FACTO CORPO-
RATION."

The requisites of a "de facto corporation" incorporated under a general law are the existence of a law under which a corporation with the powers assumed might lawfully be created, a bona fide effort to incorporate thereunder, and an actual user of the rights claimed to be conferred by such law.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 26, 70; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 2, pp. 1841–1843.]

7. CORPORATIONS (§ 32*)—PRESUMPTIONS AS TO
EXISTENCE.

In a suit to enjoin a telephone company from using the streets for its line, it will be presumed, in absence of contrary allegations in the petition, that it had attempted in good faith to incorporate under the law, and actually exercised its franchise thereunder; these elements of a de facto corporation being presumed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 106–118, 2086, 2087; Dec. Dig. § 32.*]

8. TELEGRAPHS AND TELEPHONES (§ 5*)—DE
FACTO CORPORATIONS—POWERS.

A de facto corporation is considered such corporation for all purposes, including that of constructing a telephone line upon and across any street, which right is given to telegraph corporations by Rev. St. 1911, art. 1231.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 3, 4; Dec. Dig. § 5.*]

9. EMINENT DOMAIN (§ 10*)—DE FACTO COR-
PORATIONS—POWERS.

A de facto corporation may exercise the power of eminent domain.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 35–48; Dec. Dig. § 10.*]

On Motion for Rehearing.

10. EMINENT DOMAIN (§ 119*)—STREETS—
TELEPHONE LINES—ADDITIONAL SERVITUDE.

The erection of telephone poles and wires along a public street or highway does not impose any additional servitude upon the highway, so as to require a telephone company to condemn the land of the street for that purpose.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 304–314; Dec. Dig. § 119.*]

11. DEDICATION (§ 53*)—OPERATION—STREETS.

When the owner plats property for the purpose of creating a new town, and dedicates the streets, they are as much a part of the public highways for all purposes as if condemned and paid for by the public.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 96; Dec. Dig. § 53.*]

Appeal from District Court, Cottle County; Jo. A. P. Dickson, Judge.

Suit by the Roaring Springs Townsite Company against the Paducah Telephone Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Fires, Decker & Clarke, of Quanah, for appellant. T. T. Bouldin, of Matador, for appellee.

HENDRICKS, J. The appellant, the Roaring Springs Townsite Company, a corporation, presented its petition for injunction, and for restraining order, against the Paducah Telephone Company to the judge of the Fiftieth Judicial District of Texas, and injunction was refused on preliminary hearing upon consideration of the petition, without an answer or evidence. A résumé of appellant's petition for the purpose of clarifying the assertion of issues which, it is asserted, govern the right to the injunction, it is sufficient to state that the townsite company was the owner of a section of land in Motley county, and had caused about 160 acres of same near the center of the section to be platted and marked upon the ground into lots, blocks, streets, and alleys, and had filed with the clerk of the county court of Motley county a record of said plat, designating the lots, blocks, streets, and alleys of said townsite company, together with a deed dedicating to public use the said streets and alleys, with the following reservation: "It is especially stipulated and the right is reserved in the Roaring Springs Townsite Company in and to all streets and alleys in said town to grant and convey to any person, persons, corporation, or corporations, the right to construct in, along, over, and across any of the streets and alleys of said town, telephone and telegraph lines, electric light wires and poles to sustain same, * * * and no person or corporation other than the ones designated in writing by the Roaring Springs Townsite Company shall have the right or power to use said streets and alleys for telegraph or telephone purposes." The appellant says that it "had, at a large expense, procured the construction of the Quanah, Acme & Pacific Railway Company across said lands and the opening of a station known as Roaring Springs"; that on June 19, 1913, it began the sale of lots in the platted part of the townsite, and purchasers had begun the erection of business houses and residences thereon, but that a greater part of the lots and blocks remain unsold, and are the property of appellant; that it has not expanded sufficient to incorporate into a municipality; that on July 15, 1913, the Paducah Telephone Company, through its agents, over the protest of the plaintiff, began placing poles upon the unplatted part of the lands of the townsite company, and also on the streets of the platted part of said townsite company, and stringing wires upon said poles at such places, and refused to pay appellant anything for the use of the streets.

The appellant avers that the reservation in the deed of dedication previously quoted by us was not inserted with the intention of creating a monopoly in the telephone service of the town of Roaring Springs, and tenders in its petition the right to construct and operate a telephone line and exchange over

and across the streets and alleys at convenient places, as not to incommode the public in the use of the same, "and upon the payment to plaintiff of a reasonable compensation for said right, privilege, and franchise." It further alleges that it is attempting to build a town in accordance with modern conveniences, and that in furtherance of such purpose it has procured an agreement with the Southwestern Telephone & Telegraph Company for the installation at an early date of a central station and exchange in said town, which company, it states, is much more enlarged in its facilities for telephone communications in the state of Texas, and outside of the state, and that the appellee only attempts to furnish long-distance connections in four counties of the state, and that its service is inferior to the service of the other company. Appellant specifically alleges that it "desires that telephone poles only be placed on and along the alleys of said town, and in platting said town arranged the alleys so that they could be used for this purpose, but that defendant is placing its poles in, along, and upon the streets of said town, and that the same are unsightly, tend to lessen the free use of the street by the public, and interfere with the sidewalks and curbing to be placed and now being placed in, along, and upon said streets."

The appellant further alleges an attempted procedure of condemnation of the right of way by the telephone company in the county court of Motley county, and a resistance on its part (the townsite company) in said county court, by pleadings and objections filed in said suit, alleging in such pleadings that the telephone company does not sufficiently describe the right of way; that it had procured a restraining order and injunction in the district court against said telephone company, in another proceeding, from further building, constructing, and operating a telephone line upon the land of petitioner as described in the application for condemnation of the Paducah Telephone Company; that the telephone company was improperly incorporated, and was not entitled to the right of condemnation. The condemnation suit was for the acquisition, as we understand the pleadings, of that portion of the townsite company's property not specifically platted into blocks, lots, streets, and alleys.

Appellant alleges the same proposition here as in the condemnation suit, that appellee is not empowered to exercise the right of eminent domain, for the reason that its attempted articles of incorporation only authorized it to operate telephone lines and exchanges; the laws of Texas authorizing corporations of this character for the construction and maintenance only of a telegraph and telephone line.

[1] The following has been the statutory law of this state for many years with reference to telegraph companies: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this state in such manner as not to incommode the public in the use of such roads, streets and waters." Article 1231, R. S. 1911. It is also provided by article 1232, immediately following the article quoted, that such corporations "may proceed to obtain the right of way and to condemn lands for the use of the corporation in the manner provided by law in the case of railway corporations."

The Supreme Court of this state held, in the case of San Antonio & A. P. Ry. Co. v. Southwestern Telegraph & Telephone Company, 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884, construing the previous articles, taken in connection with the act of 1891 (Acts 22d Leg. c. 101), which provided for the creation of corporations for "the construction and maintenance of a telegraph and telephone line," that said acts embraced telephone companies, and that such companies enjoy the same right of eminent domain in condemnation proceedings as telegraph companies.

Article 1235 of the same chapter of the two previous articles quoted provides that: "The corporate authorities of any city, town or village through which the line of any telegraph corporation is to pass may, by ordinance or otherwise, specify where the posts, piers or abutments shall be located, the kind of posts that shall be used, the height at which the wires shall be run; and such companies shall be governed by the regulations thus prescribed," etc.

In the case of the City of Brownwood v. Brown Telegraph & Telephone Company (Sup.) 157 S. W. 1165, the Supreme Court declared, in construing the three articles quoted by us: "It is apparent that the right of the telephone company to pass through the city or town, over and upon its streets, is absolute, and a city has no authority to deny that right. The interest of the public in convenient service by such means of communication is the basis of the grant, and is superior to any private interest." However, by virtue of article 1235, last quoted, the use by the corporation of the streets may be controlled by the city by a reasonable exercise of the power, and said city may "enforce any reasonable regulations as to the use of the streets by the city, but such city cannot use its power to regulate in such manner as to deny the corporation the right to pass through the town, and in so doing to use the streets in 'such way as not to incommode the public.'" The Supreme Court in that case further held that "the city had no authority to require the telephone company, to accept its ordinances as a condition precedent to entering the city."

The Court of Civil Appeals of the Second District, in the case of City of Texarkana v.

S. W. Telegraph & Telephone Co., 48 Tex. Civ. App. 16, 106 S. W. 915, also held that the article first quoted (1231) is exclusive as to the foundation of the right, given by the state, to corporations of this character as to the use of the public highways, subject to a reasonable regulation of a municipality when a telephone line is constructed over its streets; hence, by virtue of the statute, construed by the decisions, if the Paducah Telephone Company comes within the purview of the incorporation acts for the purpose of constructing and maintaining a telephone line, the reservation in the dedication deed of the Roaring Springs Townsite Company, attempting to retain the power to grant to such a corporation the right to construct "over and across any of the streets  *  *  * of said town, a telephone or telegraph line," is void—and we are not concerned in this cause with the proposition considerably debated, affirmatively and negatively, that such a reservation, if used by the grantor to the extent of the power attempted to be reserved, is a monopoly; neither does the case of Railway Co. v. Dunham, 39 Tex. Civ. App. 575, 88 S. W. 849, have to be considered.

When the townsite company filed its map, and executed and recorded its deed of dedication, to the public of the streets of said town, such dedication was subject to the statute previously quoted; the streets became public streets of the state, and were not required to be condemned, or paid for, by such corporations for the use of said highways, if used in such a manner as not to incommode the public, and subject to a reasonable regulation of a municipality as to such use.

A municipality could not arbitrarily prevent the use—the state has granted that because it is a public highway—neither could a townsite company reserve the right to grant the use when it dedicated such public highway.

Under the law, a townsite company, or any other owner of the land, after the dedication of its streets as a public highway, would not have the right to tender "the use of the streets upon the payment of a reasonable compensation"; the state condemned the streets when the dedication was made as public highways, and tenders the same to the telephone company, subject to the limitations stated.

[2] Again, if this is a corporation within the purview of the statutes, we are unable to conceive what the townsite company has to do with the use of the streets any more than a stranger, unless injured in some manner by the telephone company, as shown in the cause of Southwestern Telegraph & Telephone Company v. Smithdeal, 103 Tex. 131, 124 S. W. 627, same case, 104 Tex. 258, 136 S. W. 1049; the right of abatement as a public nuisance of the fixtures of the telephone company is not shown, nor is there a sufficient complaint of a deprivation of, or a damage to, its private property, safeguarded by the Constitution, sufficient for the interposition of a court of equity. There is a conclusion pleaded that the manner of the construction of the poles of the company is an interference with the sidewalks and curbing now being placed, and to be placed, by said telephone company; but a court of equity should not, however, grant an injunction upon such a conclusion, assuming that a deprivation of, or a damage to, some right of private property is attempted to be shown by the townsite company.

The pleader, probably actuated by ingenuousness in order to candidly present the entire status of the subject-matter of the litigation, alleged the condemnation proceedings in the county court, instituted by the telephone company, for the acquisition of a right of way over the unplatted portion of the townsite company's land. If, however, the purpose is more extended, and is one to obtain by indirection an injunction of such proceedings, it is not permissible if the telephone company is such a corporation as is entitled to the use of the streets granted by the statute.

[3] Lewis on Eminent Domain, vol. 2 (3d Ed.) § 926 (Old Edition, § 646), says: "Condemnation proceedings may be enjoined where, for any reason, there is no right to condemn the property for the purpose proposed, and the right to condemn cannot be litigated in the proceedings themselves.  *  *  * Such a bill will not be entertained where the grounds relied upon are available as a defense in the condemnation proceedings." While Mr. Lewis, in the same section, states some variations of the rule, and cites some contrary opinions in the notes, we believe, however, the text quoted to be the correct principle. It is also noted that the pleader alleges that the townsite company has previously obtained an injunction, in a different proceeding in the district court against the telephone company, of the condemnation proceedings in the county court, which the latter company failed to respect.

Second. We discuss the more serious question in this case: Is the Paducah Telephone Company, on account of the limited recitations in its charter, such an incorporated company as to be entitled to the advantages of the statute quoted? If not such a corporation, for the purposes of this opinion only, we treat such an association as a trespasser in attempting to construct its telephone poles upon the streets dedicated by the townsite company, and the latter as entitled to the injunction.

The statute gives the privilege only to corporations created for the purpose of constructing and maintaining telephone lines, and, if this is not a corporation, either de jure or de facto, the telephone company has not the right.

[4] "The owner of property abutting on a public highway owns the fee to the center thereof, unless otherwise declared in the

grant." City of Houston v. Finnigan, 85 S. W. 470; Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793; Cocke v. Texas & New Orleans Ry., 46 Tex. Civ. App. 363, 103 S. W. 407; Bond v. Texas & Pacific Ry. Co., 15 Tex. Civ. App. 281, 39 S. W. 978.

We excerpt the following from appellant's petition, as a part of the charter of the telephone company, germane, we think, to the immediate question:

"Article 1. This association shall be known as the Paducah Telephone Company, by which name it shall contract and be contracted with, sue and be sued, and transact all its business.

"Art. 2. This association is formed for the purpose of operating a through system of telephone lines, long-distance and local exchange, in Cottle county, Texas, and also long-distance and exchange lines in Motley, Dickens, Childress, and Foard counties, Texas. * * *

"Art. 6. The capital stock of this association shall be divided into 600 shares, each share valued at $25.00, but said capital stock may be increased to $25,000 by vote of the majority of the stockholders by amendment filed in the office of the Secretary of State; that 50 per cent. of said stock is actually fully subscribed and (paid) into the treasury of said association."

In every respect, unless subject to the criticism mentioned, the articles of association are regular and filed by the association with the Secretary of State, and the charter was granted. We also presume that the telephone company in good faith solicited this charter granted to it by the state of Texas, and there has been an actual user by it of the corporate franchise, if it exists; otherwise, it was the duty of the pleader, in an equitable proceeding for an injunction, to have negatived such elements of a de facto corporation, and the position of appellant in reality in this cause is that the appellee is not a de jure corporation, and that its charter is void and unavailable for any purpose.

We are not sure that, this association having solicited this charter, and the charter having been granted, and said association "formed for the purpose of operating a through system of telephone lines, long-distance and local exchanges," etc., in the counties named, that the same is not a substantial compliance with the statute, and would be a corporation de jure in a quo warranto proceeding between it and the state; a narrow signification of the language in the charter may not, strictly speaking, bring the same within the literal meaning of a corporation formed for the purpose of "constructing and maintaining" a telephone line, but the Secretary of State, of course, presuming his knowledge of the statute with reference to the incorporation of this character of associations, must have given a construction of the language of the charter compatible with what the statute intended, and with what the members of the prospective association were soliciting under the statute.

[5] However, we believe, if this is a de facto corporation, the appellant is unable to complain. From our reading upon this subject, we gather that, if an association is a de facto corporation, it has ordinarily in it relationship with all persons, except as against the state, the same powers, and is subject to the imposition of the same obligations, as a corporation de jure; it enjoys that status until the state questions its existence.

"A corporation de facto is, with a very few exceptions, a corporation qualified with all the powers of a perfect organization." 1 Thompson on Corporations (2d Ed.) § 225. This same author quotes from the Supreme Court of California, People v. La Rue, 67 Cal. 526, 8 Pac. 84, the following: "A corporation de facto may legally do and perform every act and thing which the same entity could do or perform were it a de jure corporation. As to all the world, except the paramount authority under which it acts, and from which it receives its charter, it occupies the same position as though in all respects valid, and even as against the state, except in direct proceedings to arrest its usurpation of power, its acts are binding."

[6, 7] From the decisions and the text-books on corporations, we gather that the requisites of a de facto corporation, where the charter is not specifically granted by the Legislature, and the same is constituted by articles of association under some general law, are: First, the existence of some law under which a corporation with the powers assumed might lawfully be created; second, an effort in good faith to incorporate thereunder; third, an actual user under the franchise granted of the rights claimed to be conferred by such law. As against the petition for injunction, as stated by us, we presume the last two elements with reference to this association to exist—the petitioner does not negative either of them, and, upon a careful reading of the petition, we are inclined to think they are inferentially alleged.

Judge Marr, of the Commission of Appeals, in the case of Allen v. Long, 80 Tex. 266, 16 S. W. 45, 26 Am. St. Rep. 735, said: "It is only where there has been an effort to conform to the forms of law in establishing a corporation, and some formal defect exists merely as to the mode of complying with the law, and the body is dealt with and acts as a corporation, that it is regarded as one de facto. 4 Am. & Eng. Enc. of Law (Old Ed.) 197, 198." The Supreme Court of Minnesota, in the case of Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 Am. St. Rep. 552, with reference to apparent organization and de facto corporations, said: "The 'color of apparent organization under some charter or enabling act' does not mean

that there shall have been a full compliance with what the law requires to be done, nor a substantial compliance. A substantial compliance will make a corporation de jure. But there must be an apparent attempt to perfect an organization under the law. There being such apparent attempt to perfect an organization, the failure as to some substantial requirement will prevent the body being a corporation de jure; but, if there be user pursuant to such attempted organization, it will not prevent it being a corporation de facto."

[8] We are inclined to think that any definition will not meet the exigencies of all cases; we, however, believe if a corporation is de facto for one purpose, whatever the nature of the litigation, unless in a direct proceeding by the state, it is a de facto corporation for all purposes, and, that such a rule is the safer policy. We believe that this is a de facto corporation, and, if not a de jure corporation, however, until there is a remonstrance and ouster by the state, it is entitled to the same privileges which the state has granted to all corporations of the same character seeking its privileges, viz.: The privilege granted by the act permitting a user for the purpose of constructing a telephone line on a public highway in such manner as not to incommode the public.

Third. While the question is not discussed, it may be contended that the statute, from a reading of all the articles in the chapter with reference to "magnetic telegraph corporation," only intended to grant the privilege of the use of the public highways to such corporations as had the right of eminent domain (which, of course, is true), following with the further assertion that a de facto corporation is not such a corporation as is entitled to the right of eminent domain.

The state has granted the charter (unless it be said that it is void, and the association is not a corporation de jure), and is presumably accepting the fees entitled to be exacted under the law from all corporations. If the right of eminent domain is denied to a public service corporation, which, on account of some omission, would otherwise be a corporation de facto, most public service corporations, if not all, would have to be de jure corporations in order to exist; the right of eminent domain is ordinarily a prerequisite to the existence of public service corporations, and the logic would be that such a public service association could not, as a practical question, attain the status of a corporation for any purpose, nor urge as a defense, if it had not entitative existence in law for any purpose, that the property which it had attempted to legally acquire by condemnation was held by color of title, unless perchance the doctrine of estoppel would cut off the antagonist. At any rate, such a doctrine we believe would entail consequences which the courts should not tolerate.

[9] The weight of authority, and we think the soundness of the reasoning, is in favor of de facto corporations exercising the right of condemnation. Thompson, in his work on Corporations (2d Ed.) vol. 1, § 257, says: "Perhaps the most prominent question that has arisen as to the power of corporations de facto is with reference to their right to exercise the power of eminent domain. * * * It may be said that there are no good reasons why this class of corporations should not possess such power. If a corporation de facto is a legal entity, as made to appear in other parts of this chapter, until questioned by proper authority, and possesses the general powers of a de jure corporation, it could certainly exercise the power of eminent domain, unless in such a proceeding strict proof of incorporation was required. But such proof is not required in such proceedings any more than in other cases of the assertion of a statutory right, and in this, as in other instances, when such right is challenged, proof of a de facto existence should be sufficient." In the note under this section are numerous authorities, affirmative and negative, upon the proposition.

Elliott on Railroads (2d Ed.) vol. 2, § 957, says: "As a rule, the legal existence of a de facto corporation can be questioned only by the state in a direct proceeding instituted for that purpose. Accordingly the courts will not enjoin a corporation from condemning land for a public purpose, on the ground that the corporation was irregularly organized, nor will they in many jurisdictions allow the legality of the incorporation of a de facto railroad corporation to be questioned in condemnation proceedings." Also see notes under this section.

The Supreme Court of Alabama, in the case of Railway Company v. Union Springs & Northern Railway Co., 144 Ala. 639, 39 South. 473, 2 L. R. A. (N. S.) 144, holds (quoting the syllabus): "The right of a corporation to exercise the power of eminent domain cannot be defeated by one whose property is sought, on the ground that it is not duly incorporated, since it may proceed as a de facto corporation." This court in its reasoning says that de facto corporations "are under the protection of the same law, and governed by the same legal principles," as de jure corporations, "so long as the state acquiesces in their existence and exercise of corporate functions." See 2 L. R. A. (N. S.) 144, and notes under said cause.

Lewis on Eminent Domain, vol. 2 (3d Ed.) § 592 (Old Ed. § 391), says: "Where the application [for condemnation] is by a corporation, its corporate existence may be denied, and thereupon proof of incorporation must be made. It will be sufficient, however, for the petitioner to show that it is a corporation de facto, and, if this appears, the legality of the incorporation cannot be inquired into. This is in accordance with the general rule that, where the existence of a corporation

comes collaterally in question, it is sufficient to show a de facto organization." Also see notes pro and con of decisions under said section upon said question.

Our conclusion is that the action of the district judge upon the preliminary hearing in denying the injunction should be affirmed, and it is so ordered.

### On Motion for Rehearing.

The appellant asserts in this cause, on motion for rehearing, that the court erred in holding that, when the townsite company filed its map, and recorded its deed of dedication to the public, the dedication was subject to article 1231, authorizing a telephone company to construct its telephone line along or across the highways of the state, insisting that, under the Constitution, the company would be required to condemn and pay the value of the fee in the street. Irrespective of the statute granting the privilege to such a public utility, the courts are in irreconcilable conflict as to the right of recovery by abutting owners for the use of the street, as exhibited by the cases of Hobbs v. Long-Distance Telephone & Telegraph Co., 147 Ala. 393, 41 South. 1003, 7 L. R. A. (N. S.) 90, 11 Ann. Cas. 461, and Frazier v. East Tennessee Telephone Co., 115 Tenn. 416, 90 S. W. 620, 3 L. R. A. (N. S.) 325, 112 Am. St. Rep. 856, 5 Ann. Cas. 838, with the annotated notes; quite a responsible array of authorities holding that the erection of a telephone or telegraph line is not inconsistent with the purpose for which a street is dedicated, and is consistent with its use as a means of intercommunication, as much so as the use of the streets by vehicles or any other accustomed mode of conveyance upon the highways, that this method of transmission is an economical substitute for actual travel, reducing time, minimizing energy, and lessening the cost of intercommunication, and is not an additional burden upon the property, but is wholly consistent with one of the principal purposes for which the street was dedicated.

[10] However, as to the statutory feature of this question, we find, in the case of Suburban Light and Power Co. v. Board of Aldermen of the City of Boston, 153 Mass. 200, 26 N. E. 447, 10 L. R. A. 497, by the Supreme Court of Massachusetts, a statute of Massachusetts which "permits telegraph companies to erect lines of electric telegraph upon and along highways and public roads in such manner as not to incommode their use by the public"—to that extent the same as our statute. The question here was not involved in that case, but referred to for the provisions of the law. However, in the case of Pierce v. Drew, 136 Mass. 75, 49 Am. Rep. 7, the same article of the statute was construed,

the syllabus of which we quote as fairly reflecting the opinion upon the feature material here: "No compensation is provided by the public statutes to the owner of the fee of a highway for the use of the same by a telegraph company. An additional servitude is not imposed by the appropriation of a public highway under Pub. St. c. 109, §§ 4, 12, for the use of a line of electric telegraph by the erection of poles and wires above the surface of the ground, and the statute is constitutional, although it makes no provision for compensation to the owner of the fee in the highway." It is true that in that case there is a minority decision by two of the judges of the Supreme Court of Massachusetts, as against the majority opinion of the other five members of the court; however, the holding of the majority opinion accords with our views, and is followed. The public street involved in that case had been obtained and paid for by condemnation, and the court further observed that: "The discovery of the telegraph developed a new and valuable mode of communicating intelligence. Its use is certainly similar to, if not identical with, that public use of transmitting information for which the highway was originally taken, even if the means adopted are quite different from the post boy or the mail coach. It is a newly discovered method of exercising the old public easement, and all appropriate methods must have been deemed to have been paid for when the road was laid out."

[11] When the owner of land plats his property for the purpose of creating a new town, and dedicates the streets, they are as much public highways as if condemned and paid for by the public; the right of public use is as much enlarged as to the streets in this character of case as if condemned and paid for.

In addition to the reasons given in that opinion, we believe that, when the townsite company dedicated its streets to the use of the public, the statute mentioned became a part of its dedication, and the owner of the land, in placing the plat upon the record, has not the right to make a reservation, as in this case, inconsistent with the statute—the dedication must be of a public street with the burden which the statute placed upon the same. If the owner has the right to limit his dedication as to the use of the street attempted to be dedicated to the public, the streets are not public highways of the state within the contemplation of the statute, which would be anomalous.

We think there were ample reasons for suggesting in the original opinion that the reservation was void on account of the statute. We have attempted to carefully consider the motion for rehearing on all questions, and it is in all things overruled.