

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

September 23, 1964

Mr. Alwin E. Pape
County Attorney
Guadalupe County
Seguin, Texas

Dear Mr. Pape:

Opinion No. C-315

Re: Whether Guadalupe County can
accept the roads and public
ways of Treasure Island with-
out further dedication.

You have requested our opinion on the following question:

"Can Guadalupe County accept the roads and
public ways of Treasure Island without further
dedication from the present land owners on the
island?"

The facts related in your letter on which this opinion
is based are:

(1)  Treasure Island is a well developed and inhabited
subdivision in Guadalupe County, Texas, with hard surface
streets which are used by anyone desiring to visit or drive
about the island and are de facto public streets by their use.

(2)  The developer, Richmond Development Company, Inc.
has duly filed plats of said subdivisions for record in the
County Clerk's Office containing the following pertinent
language:

"The owner of the land shown on this plat
and whose name is subscribed hereto, and in person
or through a duly authorized agent, acknowledged
that this plat was made from an actual survey and
dedicates to the use of the public forever all
streets, alleys, parks, watercourses, drains, ease-
ments and public places thereon shown for the pur-
poses and considerations therein expressed. . . ."
/Exception not pertinent to this opinion omitted./

(3)  We quote from your letter as follows:

"The problem that seems to stand in the way
is that the Treasure Island Homes Association, Inc.,
charges and collects a tax for various purposes,
and retains the vendor's lien on the sold land for

-1507-

its collection, payable on January 1st of each year for a term of years, January 1st, 1985, and which term may be extended, and the following is copied verbatim from one of the deeds, one of the purposes for which the tax is collected being, among other things, for street improvement and maintenance:

"From Deed:

"'. . .the property herein conveyed is hereby subjected to an annual maintenance tax and charge of a rate not to exceed 10 mills per square foot for the purpose of creating a fund to be known as "Maintenance Fund" to be paid by grantee herein, their heirs and assigns, in conjuction with a like charge to be paid by the owners of other lots on said Treasure Island to the Treasure Island Homes Ass'n., Inc. To secure the payment of such maintenance charge, a vendor's lien is hereby retained in favor of Treasure Island Homes Ass'n., Inc. against the above described property, premises, and improvements, and it shall be the same as if a vendor's lien was retained in favor of the grantor herein, and assigned by proper assignment to Treasure Island Home Ass'n, Inc. without recourse on grantor in any manner for the payment of said indebtedness. Such annual charge may be adjusted from year to year by Treasure Island Homes, Inc., as the needs of the property may in its judgment require, but in no event shall such charge be raised above 10 mills per square foot of area. Grantor herein agrees to pay its proper proportion of said fund for the unsold land fully developed as saleable lots owned by it. Treasure Island Homes Ass'n, Inc., shall apply the total fund arising from said charge, so far as it may be sufficient, toward payment of maintenance expenses incurred for any or all of the following purposes: Lighting, improving and maintaining streets, parks, parkways, esplanades, subsidizing bus service, collecting and disposing garbage, ashes, rubbish and the like, and employing policemen and watchmen, caring for vacant lots, the owning and operating of water system, the owning and operating of a landing strip for aeroplanes serving the island, and doing any other thing necessary or desirable in the opinion of the Treasure Island Homes Ass'n, Inc.

to keep the property neat and in good order, or
which it considers of general benefit to the owners
or occupants of the addition, it being understood
that the judgment of Treasure Island Homes Ass'n,
Inc., in the expenditure of said funds shall be
final so long as such judgment is exercised in
good faith. . .ETC. . . .

"'. . .The above shall be effective until January
1, 1985, and automatically extended for ten years
provided that the owners of the majority of the
square feet area in Treasure Island may revoke
such maintenance charge on either January 1, 1985
or at the end of successive ten year periods there-
after, by executing and acknowledging an appropriate
agreement or agreements in writing for such purpose
and filing the same for record in the office of
the County Clerk of Guadalupe County, Texas, at
any time prior to January 1st, 1980, or at any
time prior to five years preceding the expiration
of any successive ten year period thereafter.
Said maintenance charge shall be payable on the
first day of January of each year in advance. . . .'"

A public highway may be established by the owner of the
fee by setting it apart for public use, this method being
called dedication. Heilbron v. St. Louis Southwestern Rail-
road Co. of Texas, 113 S.W. 610, 979 (Tex.Civ.App. 1908).
Public ways that have been established by dedication are as
much public highways and are as much subject to public use
as if the land over which they run had been condemned and
paid for. Roaring Springs Townsite Co. v. Paducah Tel. Co.,
164 S.W. 50 (Tex.Civ.App. 1914, affm. 212 S.W. 147). The
general rule that the dedicator may impose such restrictions
as he sees fit on making a dedication of his property is sub-
ject to the limitation that the restriction may not be repug-
nant to the dedication or against public policy and if such
a restriction is attempted it shall be void. Roaring Springs
Townsite Co. v. Paducah Tel. Co., 109 Tex. 452, 212 S.W. 147
(1919).

As to acceptance of this dedication our courts recognize
the doctrine that a dedication of land to public use need not
be shown by deed, nor by public use for any particular length
of time, it being sufficient to show unequivocal acts or dec-
larations of the proprietor, dedicating same to public use,
and where others act on the faith of such manifested intention,
the proprietor will be estopped to deny the dedication or to
make any future use of the property inconsistent with any pur-
pose for which the land was dedicated. Tribble v. Dallas Ry.

and Terminal Co., 13 S.W.2d 933 (Tex.Civ.App. 1929, error ref.).

It is elementary that the dedicator cannot grant any interest greater than he owned but based upon the assumption that Richmond Development Company, Inc., owned the fee title at the time the plat and above cited restrictions were recorded, or at any time subsequently, and that the property owners either bought their lots from Richmond Development Company, Inc., or a successor in interest which appears to be Treasure Island Homes Association, Inc., the dedication of the roads as public and the acceptance of the public by purchase of the lots by reference to the plat and use of the roads is adequate to impress the roads with a public easement.

The maintenance charge which is a provision of the deed to private property adjoining these roads can have no effect upon the public easement in the roads. Tribble v. Dallas Ry. and Terminal Co., supra and Roaring Springs Townsite Co. v. Paducah Tel. Co., supra.

Article 6703 Vernon's Civil Statutes provides that:

> "The commissioners court shall order the laying out and opening of public roads when necessary,. . ."

Article 2351 Vernon's Civil Statutes provides as follows:

> "Each commissioners court shall:
>
> "* * *
>
> "6. Exercise general control over all roads, highways, ferries and bridges in their counties. . . ."

The Commissioners Court may make and enforce all reasonable and necessary rules for the working and repairing of public roads. Art. 6741, V.C.S. The determination of the necessity for the construction and location of public highways by a county is left to the sound judgment and discretion of the Commissioners Court. Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4 (1937).

Based upon the facts and assumptions above outlined, it is our opinion that Guadalupe County through its Commissioners Court can accept the roads and public ways of Treasure Island without further dedication.

Mr. Alwin E. Pape, page 5 (C-315)

## S U M M A R Y

Based upon the facts and assumptions set out above, Guadalupe County can accept the roads and public ways of Treasure Island without further dedication.

Very truly yours,

WAGGONER CARR
Attorney General of Texas

By _Wayne R. Rodgers_
Wayne R. Rodgers
Assistant Attorney General

WRR:dj

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Milton Richardson
J. Arthur Sandlin
Grady Chandler
Gordon Houser

APPROVED FOR THE ATTORNEY GENERAL
By: Roger Tyler