## HERRING ET AL. v. KENEIPP.

[No. 21,778. Filed December 17, 1914. Opinion modified March 24, 1915.]

HUSBAND AND WIFE.—*Wife's Interest in Realty of Deceased Husband.—Debts Contracted During Widowhood.—Sale During Subsequent Marriage to Satisfy Debts.*—Where the owner in fee simple of lands died intestate in 1875, leaving a wife and two children, aged one and five years respectively, surviving him, and the wife, during her widowhood, contracted debts for necessaries for herself and children for which she executed certain notes, and after her subsequent marriage actions were commenced to collect the notes and subject her one-third interest in the real estate to sale for their payment, in which such interest was ordered sold, and no appeal was thereafter taken from the judgments, the children of such first marriage were not entitled to a judgment in ejectment and to quiet title in them to the land sold in satisfaction of such judgments, in an action brought by them after the death of their mother on the theory that under the act of May 14, 1852 (Acts 1852 p. 248, §§17, 18, 1 G. & H. p. 294), she had no power to alienate the land descending to her on the death of her first husband. (*Schlemmer* v. *Rossler* [1877], 59 Ind. 326, and *Smith* v. *Beard* [1880], 73 Ind. 159, distinguished.)

From Gibson Circuit Court; *Herdis F. Clements,* Judge.

Action by Henry Herring and another against George T. Keneipp. From a judgment for defendant, the plaintiffs appeal. (Transferred from the Appellate Court). *Affirmed.*

*John W. Brady, Luther Benson* and *Claude A. Smith,* for appellants.

*Oscar M. Welborn, Luscius C. Embree, Morton C. Embree,* and *Wm. L. Smothers,* for appellee.

MYERS, J.—This cause was transferred from the Appellate Court, in view of a supposed conflict in cases in this court, and from the fact that a constitutional question was raised on appellee's brief. See, *Herring* v. *Keneipp* (1910), 46 Ind. App. 424, 92 N. E. 742.

This was an action by appellants against appellee in ejectment and to quiet title to certain real estate in Gibson County, Indiana. On April 18, 1875, Thomas Herring died intestate, the owner in fee simple of certain lands in Gibson County, Indiana, leaving surviving him Susan Herring, widow, and appellants Henry Herring, son, then of the age of five years, and Barbara Herring, daughter, then of the age of one year, issue of his marriage with said Susan. While Susan remained a widow, and the children of the first marriage were living, and prior to her marriage to James L. Knowles on October 16, 1878, whose wife she continued to be until her death in December, 1909, she contracted debts, alleged to be for goods, wares and merchandise, parts of which were alleged to have been necessary to the support of herself and her minor children, and alleged to have been goods, wares and merchandise sold to said Susan, for which debts she gave notes payable one day after date, without relief from valuation laws, to three several creditors. After her remarriage actions were commenced by her various creditors for the collection of the notes, alleging that she had no other property and seeking to subject one-third of the

land of which Thomas Herring died seized, specifically describing it, to the payment of this indebtedness in each of the actions, and that her one-third interest in the real estate be sold. Her husband Knowles was also made a party defendant. She answered setting up the facts set out herein, and averred that the land was not subject to sale for the payment of these debts. It was adjudged in the trial court that it was so subject, and it was ordered sold by specific decree and description, and there was no appeal. These judgments were rendered February 3, 1879. Executions ordering sale of the specific property issued, and the undivided one-third of the lands of which her first husband died seized, by the description in the judgment, was sold by the sheriff April 5, 1879, to satisfy the judgments, being purchased by Henry M. Summers, one of the principal judgment creditors, for the sum of $535.44, the amount of all the judgments and costs. That the lands levied upon by Henry M. Summers et al., were appraised for the sum of $1,490.66⅔; that on April 10, 1880, the sheriff executed a deed to Henry M. Summers for the land sold, through whom, by mesne conveyances appellee claims title.

On August 30, 1880, Henry M. Summers and John W. Harmon, as guardian of Henry Herring and Barbara Herring, minors, filed in the Gibson Circuit Court, of Indiana, what they denominated an *ex parte* petition for the partition of the lands of which Thomas Herring died seized, in which it was alleged that Henry M. Summers had become the owner of an undivided one-third through the proceedings aforesaid.

Appellants rely on 1 G. & H. p. 294, §§17, 18, approved May 14, 1852. "Sec. 17. If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; *Provided, however*, That where real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thou-

sand dollars, one-fifth only as against creditors. Sec. 18. If a widow shall marry a second or any subsequent time, holding real estate in virtue of any previous marriage, such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be.''

Appellants bring this suit alleging that their mother, Susan Knowles, had no power to alienate the lands and claiming the land described in their complaint in fee simple. Appellee, defendant below, filed an affirmative answer in one paragraph, and also a cross-complaint, to each of which plaintiffs demurred for want of facts, separately, each of which was overruled by the court, and exceptions saved by appellants. Issues were joined by answer of general denial to the cross-complaint, and reply to the answer, by general denial, and on trial by the court, and over motion by appellants for a new trial, judgment was rendered for the defendant.

Errors assigned for reversal are: (1) the court erred in overruling the demurrer to the answer; (2) the court erred in overruling the demurrer to the cross-complaint; (3) the cross-complaint does not state facts sufficient to constitute a cause of action; (4) the court erred in overruling the motion for a new trial.

Appellee contends ''that it had been expressly decided by the Supreme Court of Indiana, in the year 1863, *Philpot* v. *Webb* (1863), 20 Ind. 509, that at the death of a first husband leaving a widow and children surviving him, one-third of his real estate descended to his widow in fee, that her subsequent marriage did not divest it, that at her death while married to the second husband, the real estate which such widow took from her first husband, was liable to be sold for the payment of debts contracted by the widow, before

her second marriage, * * *.'' In that case, Waggoner died in 1859, owning certain real estate, and left surviving him his widow, and a number of children issue of such marriage. In September, 1860, the widow executed, jointly and severally, with one Henderson, two promissory notes. In November, 1860, the widow intermarried with Henderson, and in March, 1861, she died. In June, 1862, Webb, the payee brought suit against her children by the first husband, to enforce payment out of the interest of the widow in the real estate of her first husband, Henderson being insolvent. The contention of the children, defendants below, was that their mother took a life estate, and not a fee to one-third of the lands of which her first husband died seized, and that her interest in the lands was not chargeable with any debts contracted by her, and it was decided by the lower court, on the theory that she did not take a life estate, but a fee, and her undivided one-third interest in the real estate of which her husband died seized was liable for the debts so contracted. That case was determined wholly upon the question whether at her husband's death the then Mrs. Waggoner took a fee, it appearing to be taken as conceded that if she took a fee, it was subject to sale after her death, for debts created *before* her remarriage. The case at bar presents one feature which was present in the above case, viz., the contracting of an indebtedness before remarriage, but it presents a different feature in the fact that the sale in the former case was made after Mrs. Waggoner died, though at the time a married woman, while here the sale was made during the existence of the second marriage.

It is not contended that the promissory notes given by Mrs. Herring during her widowhood, created any lien upon, or effected any alienation of her real estate. Such debts did not become a charge upon these lands, until they were reduced to judgments. The matter did not rest in general judgments, but judgments were rendered specifically sub-

jecting the interest to sale for the specific debts.   Appellee insists on a distinction between debts contracted during her widowhood, when the real estate could legally be alienated, and debts contracted after the second marriage, and it is contended that the real estate may be sold upon execution during the second marriage, to satisfy debts created during widowhood, under the rule in *Philpot* v. *Webb, supra.*

It will be noted with respect to the case of *Schlemmer* v. *Rossler* (1877), 59 Ind. 326, that it appears from the opinion, that both at the time of the execution of the note, and at the time of the rendition of the judgment on it, Mrs. Schlemmer was a married woman.   It does not therefore appear that the debt was contracted during her widowhood, but during her second coverture.   In *Smith* v. *Beard* (1880), 73 Ind. 159, it appears from the opinion that there was no brief for appellee, and an examination of the record and original files in that case discloses that the only case cited by appellant in his brief is *Schlemmer* v. *Rossler, supra,* upon which the opinion in the Beard case is made to rest. The court failed to note the difference in the facts in the latter case, from the Schlemmer case, that is, that in the former the debt was created during the second coverture, while in the Beard case, it was created during the widowhood of Maria Smith, *nee* Speigle, and the Schlemmer case was not authority for the rule announced in the Beard case, based on the Schlemmer, case, and *Philpot* v. *Webb* seems to have been entirely overlooked.   When the sale was made in the case at bar, the Schlemmer case had been decided, but it declared no rule at variance with the rule in *Philpot* v. *Webb,* nor did the Beard case, when considered in the light of the facts, though mistakenly based on the Schlemmer case.   In *Smith* v. *Beard,* the conclusion was reached that an ordinary execution can not be levied on property held by a wife of a former marriage, by virtue of that marriage, during a second marriage so as to divest

the title. In that case a widow had contracted certain debts during widowhood. During her second marriage, suit was instituted and judgment obtained. Execution was issued and levied on the land which had vested in her upon the death of her first husband. There were children by her first marriage alive, and it was held by this court as we think erroneously, that the land was not liable to be sold upon execution, during the remarriage, to satisfy such debts. The distinction lies in the fact that in the Philpot case, the sale was made on an order specifically directing sale, obtained after the death of Mrs. Waggoner, for debts contracted during widowhood, and the question which is before the court in the present case was not raised, or discussed, or decided in *Smith* v. *Beard, supra,* in view of the facts presented in that case, and its being based on *Schlemmer* v. *Rossler, supra.* In the latter case the court said, "The object of the statute seems to be two-fold, first, to protect a woman who has thus received real estate by virtue of a former marriage, from improvident and injudicious alienations thereof during a second or subsequent marriage, and second, to preserve the property for the children of the marriage in virtue of which she received it, where there are such children, in case of her death during such second or subsequent marriage." We do not doubt the soundness of that declaration as applied to that case, but there are other considerations and conditions present in this case.

It will be noted that the inhibition is against alienation *during* the second or subsequent marriage. The power of alienation is only restricted by the specific conditions out of which the prohibition arises. If a widow is left to provide for herself, then if she does not have cash, she may not obtain credit for the necessaries of life without giving specific liens on her real estate every time she desires to make a purchase, or to make a lump borrowing, and create a lien for a fund against which she may draw, the first

of which plans would be intolerable in its expense, annoyance and perhaps great inconvenience, and the second plan likely to lead to improvident loans whereby the property would be swept away. Or, if she contemplates remarriage, and wishes to purchase for any purpose, shall she be under the espionage of inquiry into her purposes, or her matrimonial intentions or possibilities? If it be said that she may sweep away the property by improvident debts, during her widowhood, the answer to it all is that if she gives a mortgage to secure such debts, and she may legally do so, she can do the same thing by the creation of debts, so that it is not a question whether she is improvident or not during widowhood, but a question of the creation of debts during the subsequent marriage when the law presumes that her husband will provide for her as is his duty, and this fact doubtless has had much to do in the statute being enacted as it is, coupled with the intention to prevent the wife being overreached or misled into endangering the estate. There is therefore both in reason and on authority, a very great difference between indebtedness created during widowhood and that created during a second or subsequent marriage. If it be said that this rule would be unjust to the children of the first marriage, it is sufficient to say that it is her property, and in many cases doubtless largely earned by her efforts, and if she desires to sell it during widowhood, they have nothing to say. She can then take the proceeds to her own use.

In view of our conclusion that the judgments directing the sale were valid, it is unnecessary to decide appellee's contention as to the constitutional right vested in him against the impairment of contract rights, arising by a judicial construction of a statute under which he invested his money, or to determine the effect of any statutes of limitation.

It results that the court below did not err in its ruling on the demurrer to appellee's cross-complaint, or in ruling

on appellants' motion for a new trial, and the judgment is affirmed.

NOTE.—Reported in 107 N. E. 76. As to who are entitled to succeed to estates of intestates, see 12 Am. St. 81. See, also, 14 Cyc. 75.