## DAILEY ET AL. *v.* PUGH ET AL.

[No. 10,921. Filed June 22, 1921. Rehearing denied January 12, 1922. Transfer denied December 5, 1924. Motion to reconsider petition to transfer denied July 3, 1925.]

1. STATUTES.—*Change in language of statute presumed to be for purpose of effecting change in law.*—Where a statute is amended or re-enacted in different language, it will be presumed that the language was intentionally changed for the purpose of effecting a change in the law itself, unless it clearly appears to have been made for the purpose of expressing the original intention of the legislature more clearly. p. 436.

2. DESCENT AND DISTRIBUTION.—*Decedent dying without kindred enumerated in the first five sections of the law of descents (§§3325-3329 Burns 1926, §§2990-2994 Burns 1914, §§2467-2471 R. S. 1881), his entire estate goes to first cousins to the exclusion of cousins farther removed.*—Under the provisions ·of §3329 Burns 1926, §2994 Burns 1914, §2471 R. S. 1881, being §5 of the statutes of descent of 1852, where the ancestor left surviving him no widow, no child or descendant of a child, no father or mother, no brother or sister, or descendant of any brother or sister, no grandfather or grandmother, no uncle or aunt in either the paternal or maternal line, but leaving surviving him first cousins and children and grandchildren of deceased cousins, the entire estate goes to the first cousins, as being the "next of kin in equal degree of consanguinity," to the exclusion of the children and grandchildren of deceased cousins.   p. 436.

3. COURTS.—*Construction of statute relative to descent of property ten years old followed in subsequent case under doctrine of stare decisis.*—The Appellate Court, in 1915, having construed §3329 Burns 1926, §2994 Burns 1914 as casting an inheritance that would have gone to uncles and aunts of the decedent had they been living on his first cousins to the exclusion of second and third cousins, the decision must be followed in a subsequent case of the same kind under the doctrine of stare decisis.   p. 437.

4. COURTS.—*Doctrine of stare decisis may be applied though rule to be applied rests on single decision.*—The fact that a construction of a statute rests on a single decision does not, of itself, render it any the less the duty of the courts to apply the rule of *stare decisis.*   p. 437.

5. COURTS.—*Decision construing statute of descents, followed by three regular sessions of legislature, not too recent for application of doctrine of stare decisis.*—Where three regular sessions of the legislature have been held since a decision construing the statute of descents, without any change of the wording of the statute construed, it cannot be claimed that the decision is too recent to afford a basis for the application of the doctrine of *stare decisis.*   p. 437.

6. COURTS.—*Appellate Court should follow its decisions in subsequent appeals under doctrine of stare decisis.*—A decision of the Appellate Court may be made the basis of the application of the doctrine of *stare decisis* the same as a decision of the Supreme Court, as its opinions, in most cases, are final, and accepted as authoritative declarations of the law of this state on the questions involved therein.   p. 439.

7. COURTS.—*Decisions of Appellate Court constitute law of the state unless in conflict with decision of Supreme Court and*

*continue to be until overruled by Supreme Court.*—The decisions of the Appellate Court, unless in conflict with a decision of the Supreme Court, must be accepted as the law of the state until overruled or disapproved, or a contrary decision rendered by the Supreme Court. p. 439.

From Marion Circuit Court (31,604); *Louis B. Ewbank,* Judge.

Action by Alice M. Dailey and others against Samuel Pugh and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.* By the court in banc.

*Elias D. Salsbury, Frederick VanNuys, Allen P. Vestal, Phillip Wilkinson, Walker & Hottell, H. P. Wood, Madison & VanRiper, John V. Dye* and *Ralston, Gates, Lairy, VanNuys & Barnard,* for appellants.

*Smith, Remster, Hornbrook & Smith, Newberger, Simon & Davis, Frank B. Ross, Reginald H. Sullivan, Palmer & Elliott, Paul Y. Davis, William F. Elliott, Charles E. Cox, Douglas Morris, Lawrence B. Davis* and *John M. Wall,* for appellees.

*Baker & Richman, Elmer E. Stevenson, Joseph B. Ross, Pickens, Cox, Conder & Bain, Leffler, Ball & Leffler,* and *Wiles, Springer & Root,* Amici Curiae.

BATMAN, J.—Marshall Pugh died, intestate, on May 24, 1919, in Marion county, Indiana, leaving surviving him no widow, no child, or children, and no descendant or descendants of any child or children, no father or mother, no brother or sister, and no descendant or descendants of any brother or sister, no grandfather or grandmother, no uncle or aunt in either the paternal or maternal line, but leaving surviving him at the time of his death 236 descendants of deceased uncles and aunts, some of whom were his first cousins, and others were the children and grandchildren of certain deceased first cousins. Certain ones of those last named brought this action against the surviving first cousins and

others, to quiet their title to an undivided interest in certain real estate in Marion county, Indiana, of which the decedent died seized. The first cousins filed cross-complaints against the children and grandchildren of said deceased first cousins to quiet their title to said real estate. The issues joined on said complaint and cross-complaints, were tried by the court, and, on request, a special finding of facts was made, and conclusions of law were stated thereon. The conclusions of law were in favor of said first cousins, and against the children and grandchildren of said deceased first cousins, and judgment was rendered accordingly. The children and grandchildren of said deceased first cousins are now prosecuting this appeal on an assignment of errors which challenges each conclusion of law stated by the court on the special finding of facts.

The questions presented by this appeal involve the construction of §3329 Burns 1926, §2994 Burns 1914, the first subdivision of which reads as follows:

"If the inheritance came to the intestate by gift, devise or descent from the paternal line, it shall go to the paternal grandfather and grandmother, as joint tenants, and to the survivor of them; if neither of them be living, it shall go to the uncles and aunts in the paternal line, and their descendants, if any of them be dead; and if no such relatives be living, it shall go to the next of kin, in equal degree of consanguinity, among the paternal kindred; and if there be none of the paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order." The second subdivision provides for a distribution in the same order among the maternal kindred, where the inheritance came to the intestate by gift, devise or descent from the maternal line, while the third subdivision makes provision for distribution in the same order among both the paternal and maternal kindred,

one-half going to each line thereof, where the estate came to the intestate otherwise than by gift, devise or descent. The construction which the trial court placed on this section was, in effect, that where there are no persons named in §§1-4 inclusive of the statute of descent, being §§3325-3328 Burns 1926, §§2990-2993 Burns 1914, to inherit, and no grandfather or grandmother, and no uncle or aunt survives the intestate, the inheritance "shall go to the next of kin, in equal degree of consanguinity," as provided in the first subdivision of said §2994, supra. This construction is in harmony with the construction placed thereon in the case of *Avery* v. *Vail* (1915), 60 Ind. App. 99. Appellants contend, however, that this court erred in its decision in that case, and ask that the same be overruled. They assert that in the construction of the first subdivision of said section of the statute, "uncles and aunts  *  *  *  and their descendants, if any of them be dead" should be treated as a class, and that the provision in favor of "the next of kin, in equal degree of consanguinity" should have no application where there is a member of such class to inherit. Appellants have supported their contention by able and exhaustive briefs, which we have considered carefully, but have not been convinced that the former decision of this court, involving the same questions, is erroneous. One reason in favor of that decision, not mentioned therein, which appeals to us strongly, lies in the difference between the statute of descent enacted in 1843, and our present statute, enacted in 1852. Section 3329 Burns 1926, §2994 Burns 1914, the contents of which we have hereinbefore set out, is §5 of the Act of 1852, entitled "An Act regulating descents and the apportionment of estates." The Corresponding section of the Act of 1843, relating to the same subject, is numbered 112. Subdivisions two and three thereof read as follows:

"2. If there be no grandfather nor grandmother as above specified, to take the inheritance, the same shall descend to the brothers and sisters of the father of the intestate; or to such as shall be living and the descendants of such as shall be dead; *or if all the brothers and sisters be dead, then to their descendants.* (Our italics.)

"3. If there be no descendants of such brothers and sisters of the intestate's father, nor other heirs entitled to take according to the preceding provisions of this section, the inheritance shall then go to the nearest of kin, of equal degree of consanguinity, to the intestate, among the paternal kindred."

It will be observed that by the provisions of said subdivisions, "the nearest of kin, of equal degree of consanguinity" do not take as a class, unless, not only the grandfather and grandmother, and all the uncles and aunts are dead, *but also all descendants of uncles and aunts are dead.* The inheritance is cast upon this last named class, viz.: "descendants of uncles and aunts," by the express provision contained in the last line of said subdivision two, which we have italicized. This is the manner of distribution for which appellants are contending in the instant case, and if the Act of 1843 was still in force, their contention would be clearly right. We note, however, that in the Act of 1852, the provision contained in the last line of said subdivision two is wholly omitted. This we consider to be a significant fact, in determining the meaning the legislature intended should be given the particular provision we are now considering. It is well settled that where a statute is amended or re-enacted in different language, it will not be presumed that the difference between the two statutes was due to oversight or inadvertence on the part of the legislature; on the contrary, it will be presumed that the

language was intentionally changed for the purpose of effecting a change in the law itself, unless it clearly appears to have been made for the purpose of expressing the original intention of the legislature more clearly. 25 R. C. L. 1050; *Eversole* v. *Eversole* (1916), 169 Ky. 793, 185 S. W. 487, L. R. A. 1916E 593; *McLaren* v. *State* (1917), 82 Tex. Cr. App. 449, 199 S. W. 811; *San Antonio, etc., R. Co.* v. *Southwestern Tel., etc., Co.* (1900), 93 Texas 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. 884; *United States* v. *Bashaw* (1892), 50 Fed. 749, 1 C. C. A. 653. This rule has been recognized in this state in the following cases: *Hasley* v. *Ensley* (1907), 40 Ind. App. 598, and *State, ex rel.,* v. *Beal* (1916), 185 Ind. 192. An application of this rule in the instant case leads us to conclude that the omission of the last line in subdivision two of said §112 of the Act of 1843 from §5 of the Act of 1852, clearly evidences an intention on the part of the legislature to prevent the descendants of uncles and aunts from inheriting as a class where all such uncles and aunts are dead, as they had theretofore done, and to cast the inheritance on "the next of kin, in equal degree of consanguinity," instead.

However, if the argument made and the authorities cited by appellants convinced us that the construction of said §2994, *supra,* for which they contend was sustained by the better reason and the greater weight of authority, we would feel impelled nevertheless, to adhere to the construction placed on the same by this court in the case of *Avery* v. *Vail, supra,* by reason of the doctrine of *stare decisis,* so often declared and applied in this state. *Hines* v. *Driver* (1882), 89 Ind. 339; *Pond* v. *Irwin* (1888), 113 Ind. 243; *Legler* v. *Paine* (1896), 147 Ind. 181; *Diamond Plate Glass Co.* v. *Knote* (1906), 38 Ind. App. 20. This doctrine is especially applicable where, as in this case, a

decision construing a statute affecting the title to real estate has stood for such a length of time, as to become a recognized rule of property. The reason for its existence, and the salutary effect of its application, may be found in the following cases: *Grubbs* v. *State* (1865), 24 Ind. 295; *Rockhill* v. *Nelson* (1865), 24 Ind. 422; *Harrow* v. *Myers* (1868), 29 Ind. 469; *Carver* v. *Louthain* (1872), 38 Ind. 530; *Lindsay* v. *Lindsay* (1874), 47 Ind. 283; *Haskett* v. *Maxey* (1892), 134 Ind. 182, 19 L. R. A. 379; *Legler* v. *Paine, supra; Kinsey* v. *Union Traction Co.* (1907), 169 Ind. 563. Our attention has been called to the fact that the construction of the statute for which appellees contend rests on a decision in a single case, but this would not, of itself, render it any the less our duty to apply the doctrine in question. *Hibbits* v. *Jack* (1884), 97 Ind. 570, 49 Am. Rep. 478. This is in harmony with the rule in other jurisdictions. 26 Am. & Eng. Ency. of Law 168; *Rumsey* v. *New York, etc., R. Co.* (1892), 133 N. Y. 79, 30 N. E. 654, 15 L. R. A. 618, 28 Am. St. 600; *Bennett* v. *Bennett.* (1859), 34 Ala. 53; *Bateman* v. *Board, etc.* (1912), 102 Ark. 306, 143 S. W. 1062; *Patterson* v. *Reiter* (1912), 91 Nebr. 56, 135 N. W. 222; *VanMatre* v. *Swank* (1911), 147 Wis. 93, 131 N. W. 982. It will be observed that the decision in the case of *Avery* v. *Vail, supra,* was rendered more than six years ago, and petitions filed therein for a rehearing in this court, and a transfer of the same to the Supreme Court, were each denied more than five years ago. Since said decision was rendered and said rulings were made, three regular sessions of the legislature have convened and at least two special sessions have been held, but no change was made in the section of the statute we are now considering. It may be justly claimed, therefore, that the legislature had acquiesced in the construction which this court had theretofore placed on said section. Under these cir-

cumstances, no valid ground exists for holding that the decision relied on is too recent to afford a basis for the application of such doctrine, *Grubbs* v. *State, supra; Rockhill* v. *Nelson, supra; Stout* v. *Board, etc.* (1886), 107 Ind. 343. It is very evident that during the time that had elapsed since the decision in the case of *Avery* v. *Vail, supra,* was rendered, and the petition to transfer the same to the Supreme Court was denied, conveyances of real estate may have been accepted, and large sums of money may have been invested in reliance thereon. To overrule that case at this time, would render such conveyances ineffective, and such investments worthless. It is to prevent such results that the doctrine of *stare decisis* is applied in proper cases. *Cromie* v. *Board* (1880), 71 Ind. 208; *Frank* v. *Evansville, etc., R. Co.* (1887), 111 Ind. 132; *Carpenter* v. *Russell* (1891), 129 Ind. 571; *Kinney* v. *Heuring* (1909), 44 Ind. App. 590.

Appellants contend, however, that the decision in the case of *Avery* v. *Vail, supra,* should not be made the basis for an application of the doctrine of *stare decisis.* They assert that it is only the decisions of courts of last resort or final determination that can be made the basis for an application of that doctrine, and that this is not such a court. We cannot agree with appellants that courts of the character of this court either cannot or should not adhere to their own decisions under the doctrine stated. On the other hand, we hold that they not only may, but that it is clearly their duty to do so, in all proper cases. This court was established by the legislature in 1891, pursuant to express authority given it by the Constitution, and was given at that time, and has had continuously ever since, a wide range of jurisdiction in appealable cases. Appeals in actions to quiet title to real estate have been among the cases within its jurisdiction since

1901, and in such cases, as in many others, there is and has been no provision for an appeal from its decisions. In this respect, at least, it is a court of last resort in such cases, and, in fact, in every other respect, except that a case decided by this court may be transferred to the Supreme Court, where, in its opinion, the decision of this court contravenes a ruling precedent of that court, or a new question of law is directly involved and was decided erroneously by this court, and a petition for such transfer has been filed by the losing party, as provided in §1358 Burns 1926, §1394 Burns 1914. In most of the cases appealed to this court, its opinions are given in writing, and this is made compulsory where the judgment is reversed, by the provisions of §1417 Burns 1914. The decisions of this court, embodied in these written opinions, cover a wide range of subjects, and, unless in conflict with a decision of the Supreme Court, must be accepted as authoritative declarations of the law of this state on the questions involved, until overruled, disapproved, or a contrary decision is rendered, by the Supreme Court. The opinions of this court, like the opinions of the Supreme Court, are published by legislative authority. §1367 Burns 1926, §1427 Burns 1914. The evident purpose of this provision was to make them easily accessible to trial courts, the bar of the state, and the people generally, as precedents for their guidance in ascertaining the law which should guide them in administering justice, advising their clients and conducting their business affairs. To hold that this court either cannot or should not make a prior decision rendered by it the basis for an application of the doctrine under consideration would create uncertainty as to what the law is in this state in many instances, and lead to hopeless confusion in that regard. Under such a holding, this court, with its possible changing membership

every two years, and consequent change in individual views as to the construction of statutes and application of legal principles, would feel free, and, in fact, would be free, where not forbidden by a decision of the Supreme Court, to wholly disregard what had theretofore been declared by this court to be the law, and to substitute therefor their individual opinions. The result of such a course would be so disastrous and far reaching in its evil effects as to be intolerable. To avoid such results, courts of appeal generally have adopted and applied the doctrine of *stare decisis,* and thereby given effect to the general rule laid down by the early law writers, and quoted with approval by many courts, that: "When a rule has once been deliberately adopted and declared, it ought not to be disturbed unless by a court of appeal or review and never by the same court except for very cogent reasons and upon a clear manifestation of error." *Oliver Co.* v. *Louisville Realty Co.* (1913), 156 Ky. 628, 161 S. W. 570, 51 L. R. A. (N. S.) 293, Ann. Cas. 1915C 565; *Lyle* v. *State* (1917), 80 Tex. Cr. Rep. 606, 193 S. W. 680. The Supreme Court of this state, after quoting the same from Cooley, Constitutional Limitations, declared the rule to be a wise one. *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1913), 179 Ind. 356, 101 N. E. 296, 44 L. R. A. (N. S.) 816, Ann. Cas. 1915D 917. This court followed this rule by an application of the doctrine of *stare decisis,* based on its prior decision in the case of *Kinney* v. *Heuring, supra,* and recognized its duty to do so in proper cases in *Diamond Plate Glass Co.* v. *Knote, supra.* For the reasons stated, and following the cases last cited, we adhere to our conclusion that we would be fully justified in applying the doctrine of *stare decisis* in this case, based on the former decision of this court in the case of *Avery* v. *Vail, supra.*

Judgment affirmed.

Enloe, C. J., not participating.
Dausman, J., dissents.

## DISSENTING OPINION.

DAUSMAN, J. (dissenting)—I am convinced that the majority opinion puts an erroneous construction upon the section of the statute which is controlling in this case. I will forego a full discussion of the matter and will only briefly indicate my reasons for dissenting. I am of the opinion that said section should be construed as if written as follows:

"If the inheritance came to the intestate by gift, devise or descent from the paternal line: (1) it shall go to the paternal grandfather and grandmother as joint tenants, or to the survivor of them; (2) if neither of them be living, it shall go to the uncles and aunts in the paternal line, and their descendants, if any or all of them be dead; (3) if no uncles or aunts or their descendants be living, it shall go to the next of kin, in equal degree of consanguinity, among the paternal kindred; (4) and if there be no paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order."

That construction harmonizes with the general plan underlying our statute of descents, considered as an entirety. It has ever been the legislative plan in this state to cast the inheritance by families and to give to the descendants of those who are dead the share which the ancestor would have taken if living. The construction put upon the statute by the majority opinion violates that plan. To illustrate: (1) Suppose that the intestate left five uncles who are entitled to inherit his estate, viz.: Jerry, James, John, Henry and Lewis; then the estate, of course, would be divided into five equal parts, each uncle taking one-fifth. (2) Suppose that Uncle Jerry had died before the intestate, leaving no

child but leaving grandchildren; then the estate would be divided into five equal parts, his grandchildren (second cousins to the intestate) taking one-fifth, and each of the four living uncles one-fifth. (3) Suppose that all the uncles except Lewis had died before the intestate, each leaving grandchildren as his only descendants; then the estate would be divided into five equal parts, each of the four sets of grandchildren (second cousins to the intestate) taking one-fifth, and Uncle Lewis one-fifth. (4) Suppose that all the uncles had died before the intestate, each leaving grandchildren as his only descendants, except Lewis who left a son (first cousin to the intestate) as his only descendant. Now, behold! A complete change of plan! The inheritance is no longer to be divided into fifths. Families are no longer to be recognized. Second cousins are no longer to inherit. Everybody is now to be disinherited except the fortunate son of Lewis, who is now to take the entire estate. I cannot give my assent to that contention. Neither can I agree to the proposition that we must invoke an arbitrary rule of construction to enable us to say that because the corresponding section of the Act of 1843 was not literally copied into the revision of 1852, something different was necessarily intended. The reason of the case leads me to believe that the author of the revision intended the same things, but that he had a mania for brevity. Instead of retaining the lucid language of the Act of 1843 he has given us brevity at the expense of clarity. For the sake of brevity he has given us faulty diction, ambiguity, uncertainty. It is another instance of the truth that change does not necessarily mean improvement. *Cox* v. *Cox* (1873), 44 Ind. 368.

To sustain appellees' contention the section must be read as follows:

"If the inheritance came to the intestate by gift, de-

vise or descent from the paternal line: (1) it shall go to the paternal grandfather and grandmother as joint tenants, or to the survivor of them; (2) if neither of them be living, it shall go to the uncles and aunts in the paternal line, and the descendants of such of them as are dead, if any but not all of them be dead; (3) if none of the uncles or aunts be living, it shall go to the next of kin, in equal degree of consanguinity, among the paternal kindred; (4) and if there be none of the paternal kindred entitled to take the inheritance as above prescribed, it shall go to the maternal kindred in the same order."

Counsel for the appellees concede that so long as any uncle or aunt be living the descendants of any deceased uncle or aunt—children, grandchildren, or great-grand-children, as the case may be—are entitled to the share which their ancestor would take if alive. To hold, then, that the fundamental plan must be abandoned if all uncles and aunts are dead, is a radical and unjustifiable departure. If the intention were that uncles and aunts should take as a separate and distinct class we are bound to assume that the statutory language would be "to uncles and aunts in the paternal line, or to such of them as shall be living." The mere fact that the de-scendants of such uncles and aunts as are dead are entitled to divide the estate with such uncles and aunts as are living, conclusively establishes the proposition that the class consists not of uncles and aunts alone, but of uncles and aunts and "their descendants."

While the language of said section is awkward enough, I cannot believe that clause three would have been written as it is if it was intended to express the meaning for which the appellees contend. It seems to me that it is not intended that the estate shall go to the indefinite "next of kin," whoever he may be, or wher-ever he may be found "among the paternal kindred,"

until after the class consisting of uncles and aunts and their descendants has been exhausted. To my mind it is too clear to admit of argument that the words "no such relatives" mean "no grandfather or grandmother, no uncle or aunt, and no descendant of any uncle or aunt." The words "such relations" necessarily relate back and include all relatives previously mentioned in the section.

The probabilities are that the case of *Avery* v. *Vail, supra,* disturbed as many titles as now would be disturbed by overruling that case. The Avery case has not "stood for such a length of time" as to justify us in perpetuating error by invoking the rule of *stare decisis.* The probability of unsettling any title is not sufficiently apparent to impel us to say that litigants now before us shall, in the interest of the public welfare, suffer for others. *Hibbits* v. *Jack* (1884), 97 Ind. 570, 49 Am. Rep. 478; *Board, etc.,* v. *Allman, Admr.* (1895), 142 Ind. 573, 39 L. R. A. 58; 15 C. J. 916 *et seq.; Stephenson* v. *Boody* (1894), 139 Ind. 60; *United States Saving, etc., Co.* v. *Harris* (1895), 142 Ind. 226, 40 N. E. 1072; *Herring* v. *Keneipp* (1914), 183 Ind. 91, 102 N. E. 837; *Myers* v. *Boyd* (1896), 144 Ind. 496, 43 N. E. 567; *Town of Hardinsburg* v. *Cravens* (1897), 148 Ind. 1, 47 N. E. 153; *Sudbury* v. *Board, etc.* (1901), 157 Ind. 446, 62 N. E. 45; *Gross* v. *Board, etc.* (1902), 158 Ind. 531, 64 N. E. 25, 58 L. R. A. 394.